In the Matter of the Estate of ALBERT PEPPER, Deceased. ARNOLD M. GRANT, as Executor of ALBERT PEPPER, Deceased, Respondent; SYLVIA GLANTZ et al., Appellants.

Argued April 8, 1954; decided June 4, 1954.

*George Natanson* and *M. Theodore Chester* for appellants. I. The language under construction is a valid direction against apportionment. (*Matter of Duryea*, 277 N. Y. 310; *Matter of Halle*, 270 App. Div. 619; *Simon* v. *Hoey*, 88 F. Supp. 754, 180 F. 2d 354; 339 U. S. 966; *Matter of Harbord*, 197 Misc. 760; *Matter of James*, 180 Misc. 441, 267 App. Div. 761; *Matter of Hund*, 266 App. Div. 379; *Matter of Lemmerman*, 199 Misc. 49; *Matter of Aldrich*, 259 App. Div. 162; *Matter of Reid*, 193 Misc. 154.) II. The construction under review can be sustained only by completely ignoring paragraph Third of the will. Such a result violates a fundamental rule of will construction. (*Matter of Jaycox*, 233 App. Div. 67, 258 N. Y. 587; *Matter of Kingsley*, 194 Misc. 590; *Matter of Durand*, 250 N. Y. 45.) III. There is no ambiguity in the will. (*Matter of Hamlin*, 185 App. Div. 153.)

*Wolfe R. Charney* and *Arnold M. Grant* for respondent. I. As a matter of law paragraph Third of the will does not contain a direction against apportionment of estate taxes within the respective residuary trusts. (*Matter of Blumenthal,* 182 Misc. 137, 267 App. Div. 949, 293 N. Y. 707; *Matter of Stanfield,* 170 Misc. 447, 257 App. Div. 932.) II. Paragraph Third of the will does not negate section 124 of the Decedent Estate Law since it does not contain a clear and unambiguous stipulation against tax apportionment. (*Matter of Kaufman,* 170 Misc. 436; *Matter of Dettmer,* 179 Misc. 844; *Matter of Mills,* 189 Misc. 136, 272 App. Div. 229, 297 N. Y. 1012; *Matter of Duryea,* 277 N. Y. 310.) III. Testator's intention not to impose on the widow taxes not attributable to her trust is clear. (*Matter of Durand,* 250 N. Y. 45; *Matter of Sliter,* 286 N. Y. 117.)

Conway, J. This is an appeal by leave of this court from an order of the Appellate Division, First Department, affirming, unanimously, a decree of the Surrogate's Court, New York County (Frankenthaler, S.), which adjudged that paragraph Third of testator's will was not a direction against estate tax apportionment within the meaning of section 124 of the Decedent Estate Law.

Testator died on June 12, 1949, survived by his wife and two sisters.

Paragraph First of the will revokes all earlier wills and codicils.

Paragraph Second directs the payment of debts and funeral expenses.

Paragraph Third — which is in dispute here — provides: " Third: All of the bequests hereinafter made shall be paid over and all of the trusts hereinafter created shall be set up by the executors and trustees, *freed from all deductions for inheritance, transfer, estate, or any other tax* imposed by any Commonwealth or State of the United States or Government of the United States for the inheritance or transfer of interest in a decedent's estate, which tax, including any tax payable by virtue of insurance on my life or any gifts or disposition of assets which I may have made during my life, *I will and direct shall be paid out of my residuary estate.*" (Emphasis supplied.)

Paragraph Fourth nominates the executor and trustee and together with paragraphs Eighth through Fifteenth provides for limited invasion of the trust corpus, guardianship of infants and extensive executorial powers.

All of the dispositive provisions of the will are found in paragraphs Fifth, Sixth and Seventh.

Paragraph Fifth gives the widow, Geraldine Pepper, the income for her life from a trust of $50,000 plus one half of the residuary estate and grants her a power of appointment over the corpus. It further provides that if the widow should predecease the testator or should fail validly to exercise the power of appointment, the corpus is to be divided between the appellants Sylvia Glantz and Gertrude Levi.

Paragraph Sixth of the will creates a trust of one fourth of the residuary estate with income to appellant Sylvia Glantz for her life and remainder to her issue.

Paragraph Seventh creates a trust of the final one fourth of the residuary estate with income to appellant Gertrude Levi for her life and the remainder to her issue.

Prior to the enaction of section 124 of the Decedent Estate Law (1930) estate taxes were, generally speaking, payable out of the residuary estate (see 5 Jessup-Redfield on Surrogates' Law and Practice, p. 398). This resulted in hardship and injustice in many cases. The natural objects of a testator's bounty are generally those who are bequeathed the residuary estate and under the rule stated they were saddled with the entire tax while other beneficiaries — more distantly related or not at all related to testator — would pay no taxes (5 Jessup-Redfield on Surrogates' Law and Practice, p. 398). This unsatisfactory situation prompted the enactment by the Legislature in 1930 of section 124 of the Decedent Estate Law (amended in 1940) which lays down the rule that estate taxes imposed by State or Federal authority are, in the absence of a contrary direction in the will, to be prorated by the Surrogate among the distributees in proportion to the values of their gifts, *except that in making such proration allowances are to be made for such exemptions and deductions as may be allowed the distributees by law*. Insofar as pertinent section 124, as amended in 1940, reads: " 1. Whenever it appears upon any accounting, or

in any appropriate action or proceeding, that an executor, administrator, temporary administrator, trustee or other person acting in a fiduciary capacity, has paid a death tax levied or assessed under the provisions of article ten-c of the tax law, or under the provisions of the United States revenue act of nineteen hundred twenty-six, as amended by the United States revenue act of nineteen hundred twenty-eight, or under any death tax law of the United States hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will * * * shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such proration shall be made by the surrogate in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that in making such proration allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate * * *.''

Section 124 has been characterized as remedial in nature and its direction that there be an apportionment of taxes in accordance with the formula therein prescribed is to be carried out unless there is a clearly expressed intention to the contrary in the will. (*Matter of Durkee*, 183 Misc. 382; *Matter of Mills*, 189 Misc. 136, 141, affd. 272 App. Div. 229, affd. 297 N. Y. 1012; see, also, *Matter of Vanderbilt*, 295 N. Y. 964.)

The sole question to be answered in this case is: Does the testator's will contain a clear and unambiguous direction against apportionment of taxes as prescribed by section 124 of the Decedent Estate Law? If it does contain such a direction, the statutory formula will not apply and the residuary estate must bear all of the taxes. Since the widow is entitled to one half of the residuary in trust and the sisters one quarter each, the widow will be called upon to pay one half of the entire tax and the sisters will each bear one quarter thereof. On the other

hand, if the will does not contain a clear and unambiguous direction against apportionment, the statutory formula for apportionment found in section 124 will be utilized, and, in prorating the tax among the three distributees, the widow will be given an allowance for the marital deduction authorized by law.

The executor maintains that the determination of the Surrogate and the Appellate Division effectuates testator's purpose of obtaining for his widow the maximum marital deduction and that a contrary determination would work inequity upon the wife. Some preliminary discussion of the marital deduction is necessary before analyzing this contention of the executor.

The Federal Revenue Act of 1948 has effected a revolutionary change in the theory of estate taxation. By means of a '' marital deduction '' it seeks to extend to the estates of decedents domiciled in noncommunity property States the tax advantages theretofore enjoyed only by estates of persons who were residents of community property States. Thus, under the act certain property interests, described in the act and regulations as '' deductible interests '' are relieved from the burden of Federal estate taxation in the estate of the spouse first to die. These '' deductible interests '', whether passing to the surviving spouse by will, or outside of the will, are thus deductible, to the extent of one half of the '' adjusted gross estate '', in calculating the estate tax. The '' adjusted gross estate '' is arrived at by deducting from the total value of the gross taxable estate the aggregate of allowable debts (exclusive of any estate, legacy or inheritance tax), and funeral and administration expenses as provided in section 812 (subd. [b]) of the Internal Revenue Code (U. S. Code, tit. 26). If the value of the deductible assets passing to the surviving spouse amounts to less than one half of the '' adjusted gross estate '' the deduction will be limited to the aggregate value of the qualifying assets so passing. If the value of the deductible assets passing to the surviving spouse amounts to more than one half of the '' adjusted gross estate '', the deduction will, of course, be limited to one half of the '' adjusted gross estate ''. (See Fingar & Bookstaver on New York Wills, §§ 199, 199C.)

Among those property interests which may qualify for the marital deduction is property passing under a testamentary

trust, all of the income of which is payable to or applicable to the exclusive use of the surviving spouse for life, and which is so payable or applicable at least annually, with an unqualified power of appointment over the corpus (Internal Revenue Code, U. S. Code, tit. 26, § 812, subd. [e]).

The trust created by testator for his wife had all of those characteristics and, so, that property interest qualified for a marital deduction up to 50% of the adjusted gross estate.

Of course, it must be remembered that the marital deduction under both Federal and State law (Tax Law, § 249-s, was modeled after the Federal law and enacted in 1950) is a deduction to be made from the value of the adjusted gross estate in arriving at the value of the net estate for the purpose of computing estate taxes. It is a deduction allowed to the estate, as such.

The executor argues that the trust for the wife was expressly created by testator to take full advantage of the marital deduction provisions of the Federal estate tax law and that he intended the full benefit of the deduction to inure to his widow. That is, testator not only intended to obtain the maximum marital deduction in computing the value of the estate for tax purposes, but he also intended that the benefit of that deduction be passed on to his widow by means of apportionment of the taxes pursuant to the statutory formula of section 124 of the Decedent Estate Law. As mentioned earlier, that section provides that the taxes are to be prorated among the persons interested in the estate in the proportion that the value of the interest passing to each such person bears to the total value of the interests passing to all such persons, except that, in making such proration, allowances are to be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate.

The record does not reveal the value of the testator's estate, or the value of the interests passing to the widow and the sisters. However, we are informed by counsel that the estate taxes amount to about $46,000. We are also told that if the taxes were apportioned and prorated pursuant to the statutory formula prescribed by section 124 of the Decedent Estate Law, among the widow and testator's sisters, the widow would receive

the full benefit of the marital deduction and the sisters' shares would be charged with payment of about $23,000 each. On the other hand, by charging the taxes as the sister-appellants urge, i.e., entirely against the residuary estate, the widow's share of the estate would be subjected to a tax of about $23,000 and that of the sisters to a tax of some $11,500 apiece.

The fact that a testator may have disposed of his property in a manner which seems not to be in accord with the ideas of some as to fairness and equity is not a basis for disregarding the testator's express wishes by rewriting his will. The privilege of disposition does not belong to the courts but to the testator alone and as long as he possesses testamentary capacity and makes such provision for his spouse as the law requires, his wishes as to the disposition of his property must govern. Testator is privileged to cause a shift of the tax burden of his estate from the sisters to the widow, thus imposing a burden upon the widow which the law would not have imposed, if he sees fit to do so. However, to accomplish that result the direction in testator's will must be clear and unambiguous.

Doubtless, standing by itself, paragraph Third is a clear direction against the use of the tax apportionment formula prescribed in section 124 of the Decedent Estate Law. The bequests made and the trusts created were, the testator declared in so many words, to be '' freed from all deductions '' for taxes, and he went on to direct that such taxes '' shall be paid out of my residuary estate ''. The meaning of '' residuary estate '' is also clear; it consisted of all of testator's properties less debts and the sum of $50,000 that went into the trust for the wife.

That leaves us with the question of whether ambiguity results when the will is read in its entirety.

The executor contends that paragraph Third of the will when read in conjunction with paragraphs Fifth, Sixth and Seventh is replete with ambiguity, contradicts itself and is a complete paradox. He asserts: '' The paradox is self-evident. The testator first directed, in Paragraph THIRD, that all bequests and trusts in the will be set up free of the tax; directed the trusts to be created out of the residuary estate in Paragraphs FIFTH, SIXTH and SEVENTH, but also directed in Paragraph THIRD that all taxes be paid out of the same residuary estate

out of which the trusts were to be created. The inherent contradiction in the will renders Paragraph Third meaningless."

In our judgment the executor's conclusion is well founded.

Someone is obligated to pay the estate taxes. The testator did not direct that his wife was to pay them out of the $50,000 which was to go into a trust for her and no one contends that testator intended that result. Rather, he directed that they were to come out of the residuary estate, i.e., all of testator's properties less debts and the sum of $50,000 bequeathed in trust for the wife. But earlier in the same paragraph Third, he directed that the trusts to be created — by directions in paragraphs Fifth, Sixth and Seventh out of the residuary estate — were to be set up freed from all deductions for inheritance, transfer, estate or other tax. Phrased differently, he directed in one and the same paragraph that the trusts were not to be charged with a tax but that the residuary estate, which by directions in paragraphs Fifth, Sixth and Seventh was to be divided into three shares to make up those trusts, was to be taxed. If the latter direction be followed, viz., that the taxes be paid out of the residuary estate, the result is that the trusts created are not set up freed of taxes as he directed in the opening portion of paragraph Third, but are set up each having borne a share of the taxes. If the early direction be followed, viz., that the trusts be set up freed from all deductions for inheritance, transfer, estate or any other tax, then the direction that the taxes be paid out of the residuary estate is meaningless for the property going into the trusts comprises the entire residuary estate and after the trusts are set up freed from taxes no residuary remains from which taxes can be paid. The first clause directing the trusts to be set up free of tax and the last clause directing all taxes to be paid out of the residuary estate cancel out or neutralize each other. The net result is that this will does not contain a direction against statutory apportionment. However, in deciding this case we need not go that far. We need only hold that it *does not contain a clear and unambiguous direction to that effect.* There is a strong policy in favor of statutory apportionment. Those who contend against apportionment must bear the burden of proof (*Matter of Kaufman,* 170 Misc. 436; *Matter*

*of Dettmer,* 179 Misc. 844) and the direction in testator's will must be clear and unambiguous. As was said in *Matter of Mills* (189 Misc. 136, 141, affd. 272 App. Div. 229, affd. 297 N. Y. 1012, *supra*): "In case of doubt as to what the will means on the subject of taxes the statutory direction to apportion is absolute." In our opinion the executor has shown the existence of an ambiguity as to what the will means on the subject of taxes.

Wills are made up of words and to each word, clause and paragraph a proper meaning and weight, as well as a proper relation to all other words, clauses and paragraphs, must be attached. Otherwise, omissions would have been made by the testator. We do not say here that if paragraph Third was read alone and we stopped there it would not bear the construction put upon it by Judge FROESSEL. We do say, however, that when one reads on and includes in the reading paragraphs Fifth, Sixth and Seventh, then paragraph Third becomes unclear and since the direction against statutory apportionment must be clear to be effective, we must conclude that the construction adopted by the Surrogate and the Appellate Division is the correct one.

The order of the Appellate Division should be affirmed, with costs to both parties payable out of the estate.

FROESSEL, J. (dissenting). Prior to 1930, when section 124 of the Decedent Estate Law was enacted, estate taxes were ordinarily payable "before determination and computation of the shares payable to individual legatees" (*Matter of del Drago,* 287 N. Y. 61, 71, revd. on other grounds 317 U. S. 95). By virtue of said statute, equitable proration of Federal and State estate taxes among the beneficiaries of the estate is now required, "except in a case where a testator otherwise directs in his will".

In this case the testator, who died on June 12, 1949, leaving him surviving his widow and two sisters, directed in paragraph Third of his will that all estate taxes "shall be paid out of my residuary estate". The full text of this paragraph and the substance of the remaining paragraphs of his will are set forth in the prevailing opinion.

Paragraph Third of the will is now before us for construction, and we are all agreed that, standing by itself, it is a clear direction against the use of the tax apportionment formula prescribed in section 124 of the Decedent Estate Law. But, say the

majority, there is an inconsistency between this paragraph and the later paragraphs Fifth, Sixth and Seventh, with resultant ambiguity.

I cannot follow this reasoning. The testator had a perfect right to direct that all estate taxes be paid out of his residuary estate, both before and after the enactment of section 124. That statute provides for equitable proration only where a testator does not otherwise direct in his will. Here he has made such direction in the clearest possible language. To say that such direction may not be heeded here is virtually to hold that no language can be safely framed to come within the exception of section 124.

Its application to the disposition of his estate under the terms of his will is unmistakably plain. After providing for the payment of his debts and expenses, and *before* making any dispositive provisions, he wills and directs that all estate taxes be paid out of his residuary estate. At the same time he makes it clear that the " bequests hereinafter made shall be paid over " and " the trusts hereinafter created shall be set up  *   *   * freed from all " estate taxes. He next gives $50,000, free of taxes, as part of the trust for the benefit of his wife. *Only then,* after providing for the payment of (1) debts and expenses, (2) estate taxes, and (3) said specific sum, may the trusts be *set up* out of " all the rest, residue and remainder of my estate " for the widow and two sisters, and *when* the trusts are *set up* they are free of taxes, which have already been provided for in the prior paragraph Third of the will. It is manifest that he did not wish to disturb the precise proportions of his trust plan in giving $50,000 plus one half to his wife, and an *equal* one half to his sisters.

The widow thus receives substantially more than either her elective share under section 18 of the Decedent Estate Law (one half of the estate), or her intestate share under section 83 (subd. 4) of the Decedent Estate Law (one half of the estate plus $10,000), *to wit:* $50,000 in addition to one half (properly in trust) of the *remaining* residuary estate. The portion of the taxes which she seeks to avoid, and which we are told will amount to $23,000, will as directed first come out of the residuary estate, and, though she will not receive the life income on said

$23,000 which she would have had if it were not for paragraph Third, that is so because the husband directed otherwise in his will.

Thus there is neither inconsistency, paradox, ambiguity nor inequity in this will, and the testator's clear intention should not be struck down and utterly disregarded. We have no right to speculate as to any alleged ambiguity concerning his motive. " The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them " (*Matter of Watson,* 262 N. Y. 284, 293; *Matter of Roth,* 291 N. Y. 1, 6). When a testator's intent is manifest, " it is quite unnecessary to discuss the decisions made in other cases " (*Matter of Pulis,* 220 N. Y. 196, 202).

I would reverse, and heed the testator's will.

LEWIS, Ch. J., DESMOND, DYE, FULD and VAN VOORHIS, JJ., concur with CONWAY, J.; FROESSEL, J., dissents in opinion.

Order affirmed.