John M. Keane, S.
Earl F. Miller left an estate upwards of $4,300,000. He made a specific bequest of a mobile home valued at $5,500; general bequests to individuals totaling $43,000, and a bequest of $42,914 to the Apalachin Methodist Church, representing the amount necessary to pay off the indebtedness on its improvements. The residue of his estate was divided into six equal parts. Four first cousins each received a part. *1093 One individual not related to him received a part. A charitable trust with income payable to the Apalachin Methodist Church received the final part.
The residuary clause reads as follows: “ All the rest, residue and remainder of my estate, both real and personal, wheresoever situated, of which I shall die seized or possessed, or to which I shall be entitled or over which I shall have any power of testamentary disposition or appointment, I direct my Executor to divide into six equal parts, which I give, devise and bequeath as follows: ”
Then followed the names of beneficiaries mentioned aforesaid.
The final paragraph of the will which has given rise to this construction proceeding reads as follows:
“ nineteenth: I direct that all estate, transfer, inheritance and like taxes, including interest and penalties, imposed or assessed by the federal or state government or any other duly constituted authority upon or with respect to property passing under this, my Will, and any property passing outside of my Will, which is required to be included in my taxable estate, be paid out of my testamentary residuary and that no portion thereof shall be apportioned to or collected from any legatee, devisee or other recipient of property constituting part of my taxable estate.” (Emphasis supplied.)
Upon audit of the estate tax return, the agent took the position that all estate taxes are payable out of the portion of the residuary estate passing to the charitable trust because of the language above italicized in paragraph ‘ ‘ nineteenth ’ ’. At the appellate level of the Internal Revenue Service, an alternative position was taken that the estate taxes were payable out of the residuary with the charitable trust bearing its share of the taxes along with the five individual residuary legatees.
A third position advanced by the executor and the Attorney-General in this proceeding contends that any estate taxes on preresiduary bequests to individuals shall be charged against the residuary estate before division into six equal parts. The executor and the Attorney-General then contend that within the residuary, there should be an apportionment of the taxes in accordance with EPTL 2-1.8.
It is clear that the controversy is generated by the language above italicized of paragraph nineteenth.
“ The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and effectuated *1094 as far as is consonant with principles of law and public policy. ’ ’ (Matter of Fabbri, 2 N Y 2d 236, 239-240.)
Great latitude is given to the court in this situation, even to the extreme extent of redrafting portions of a will. Such radical remedies are not required with this particular will.
The testamentary plan was clear-cut and simple. The testator made modest general bequests to certain individuals. The largest general bequest of $42,914 went to the Apalachin Methodist Church. This was almost 47% of the total general bequests. The balance of this substantial estate was divided into six equal parts. With the high esteem in which this decedent held his church, it would violate all of the canons of construction to determine that the one-sixth equal portion of the residuary given in trust for the benefit of his church be wiped out entirely by the payment of estate taxes.
This situation is similar to that faced by Mr. Surrogate Di Falco in Matter of Graustein (65 Misc 2d 700). Where there is a clear charitable intent, it will not be thwarted by a strict literal reading of ambiguous language. Mr. Surrogate Di Falco had no difficulty in construing the will before him to overcome ambiguity and make viable the intent of the testator to benefit charity.
Therefore, the court concludes that it was the intention of the testator to benefit his church as a one-sixth residuary legatee and not to have that share wiped out by the payment of the large estate taxes levied upon this substantial estate. Thus the position taken by the agent upon the original audit is not tenable in view of all of the circumstances and must be dismissed.
We now pass to the other two positions. Certainly the estate taxes on the shares passing to the individuals as preresiduary legatees, are to be free of any estate tax on their part. This means that the estate taxes chargeable against the preresiduary bequests to individuals must be charged against the residuary before division into the six equal parts. The court is aware that if all of the estate taxes are paid out of the residuary before division into the six equal parts, the share for the charitable trust will be reduced.
It is not always that a testator wishes to have a charity receive more than the other residuary legatees. The language of the will must be examined in the light of prior decisions concerned with this problem. To avoid application of the provisions for apportionment, “ the direction in testator’s will must be clear and unambiguous.” (Matter of Pepper, 307 N. Y. 242, 251.) Certainly there is ambiguity in the portion of paragraph otiíetbbuth italicized above.
*1095 It can be argued that if an apportionment is made pursuant to statute, the intention of the testator will be violated because the charitable trust will receive its one-sixth part free from any tax on the residue while the parts of the other five residuary legatees will bear all of the tax within the residue. The courts have held otherwise. The following language from Matter of Shubert (10 N Y 2d 461, 473-474) is appropriate: “ The testator is presumed to know the law and the impact of estate taxes. Since he did not expressly make a direction against apportionment within the residuary, he must be presumed to have intended ‘ gross equality ’ or equality prior to taxes, rather than ‘ net equality ’ or equality after the tax impact (Jerome v. Jerome, 139 Conn. 285). The loss of ‘ equality ’ or the upsetting of proportions set up in the will is a consequence of apportionment whenever a proportion or percentage of the residue is left to an exempt beneficiary and another proportion or percentage is bequeathed in a taxable manner.”
The court determines that estate taxes attributable to the preresiduary bequests must come out of the residuary estate before its division into six equal parts. After said division, there shall be apportionment of the tax within the residuary pursuant to EPTL 2-1.8.